# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TERRY W. RAGSDALE, )
)
        Plaintiff, )
)
v. ) Case No. CIV-14-335-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Terry W. Ragsdale requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born December 30, 1950, and was sixty-two years old at the time of the administrative hearing (Tr. 27, 102). He has a high school education, two years of college, and has worked as a retail manager and a superintendent, plant protection/security manager (Tr. 27-28, 41-42).[2] The claimant alleges that he has been unable to work since April 9, 2010, due to degenerative disc disease, arthritis, and a paralyzed diaphragm (Tr. 118).

**Procedural History**

On December 22, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 839-42). His application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 15, 2013 (Tr. 13-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he required the ability to alternately sit and stand throughout the workday at least once every fifteen minutes without leaving the

---

[2] At the administrative hearing, the VE initially testified that the claimant's past relevant work included a job as a security manager (DICOT § 189.167-050). The ALJ then inquired about DOT Code 189.167-050, to which the VE responded the job was superintendent, plant protection, and that it was "closer." In his written opinion, the ALJ found the claimant's past relevant work included the security manager job. Security manager is listed as another title for the superintendent, plant protection job, and both jobs share the same DOT Code.

workstation for the purpose of changing positions only, and could occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 16). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a retail manager and security manager (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining that he could return to his past relevant work, and (ii) by improperly assessing his credibility. The undersigned Magistrate Judge finds the first contention persuasive.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, arthritis, and paralyzed diaphragm, as well as the nonsevere impairments of hypertension and sleeping problems (Tr. 15). The medical evidence relevant to this appeal shows that Dr. Meyer treated the claimant for low back pain from January 31, 2008, through December 18, 2012 (Tr. 228-69, 351-75). The claimant's treatment was largely medication management, although Dr. Meyer administered a nonsteroidal anti-inflammatory injection on April 8, 2010, which the claimant reported as being somewhat effective (Tr. 239, 246). An MRI of the claimant's lumbosacral spine dated April 13, 2010, revealed small scattered endplate osteophyte formation throughout the lumbar spine, and intervertebral disc space narrowing at L4-5, but no spondylolisthesis or pars inarticularis defects, and normal sacroiliac joints (Tr. 201-03). An MRI of the claimant's lumbar spine the same day revealed desiccation of the intervertebral discs throughout the lumbar spine, loss of intervertebral disc space at L4-5, mild degenerative changes at L1-2 through L4-5 facet joints, moderate degenerative changes at L5-S1 facet joints, and mild

disc bulges at L1-2 and L4-5 without impression upon the thecal sac or encroachment into the neural foramina. There was no focal disc herniation, neural foraminal narrowing, or spinal stenosis (Tr. 200-01).

On May 13, 2011, Dr. Ronald Schatzman performed a physical consultative examination (Tr. 330-37). Dr. Schatzman found the claimant had decreased range of motion in his lumbosacral spine with pain, and decreased sensation at L5, but his cervical spine and thoracolumbar spine were non-tender with full range of motion (Tr. 331, 335). Dr. Schatzman noted the claimant walked with a mild antalgic gait on the right, that his heel and toe walking were weak on the right leg, but he did not use assistive devices or limp, and was able to heel walk, toe walk, tandem walk, and squat without difficulty (Tr. 331-32, 335). Dr. Schatzman noted the claimant's history included hypertension, lymphedema (left arm), and chronic back pain, post fusion with radiculitis (Tr. 332).

State agency physician Dr. James Metcalf reviewed the record on September 7, 2011, and found the claimant could perform the full range of light work (Tr. 339).

At the administrative hearing, the claimant testified he was unable to work due to constant pain (Tr. 28). He stated he could not do "much of anything for very long" before he needed to take a break, lie down, or take pain medication (Tr. 28). He further stated he spends his day doing a "little bit" of housework, cooking, and visiting family (Tr. 29). The claimant testified that he spends three to four hours per day lying down (Tr. 29). He stated his pain was primarily in his back, but that it radiated into his legs and shoulders, had increased over time, and affected his ability to concentrate (Tr. 30). On a ten-point scale, the claimant rated his pain at three or four on a "good day" and at six or

seven on a "bad day" (Tr. 30). He stated his medication improved his pain, but did not provide full relief (Tr. 31). The claimant testified that he gets "winded" easily due to a paralyzed diaphragm, and is limited with his left hand due to lymphedema (Tr. 35). As to specific limitations, the claimant stated he could sit for fifteen to twenty minutes, stand for five to ten minutes, walk up to half a mile, lift less than ten pounds, and climb one flight of stairs (Tr. 38-40).

Regarding his past relevant work, the claimant testified that he worked as a director of security at a hospital and owned/operated a computer store (Tr. 27-28). He further testified part of his duties at the hospital included "doing a lot of reports," and that he quit because he could not concentrate on paperwork due to his pain (Tr. 30). In response to questions from the ALJ, the VE testified that the claimant's past relevant work included security manager (DICOT § 189.167-050), and retail manager (DICOT § 185.167-046), both of which she stated were classified as skilled, light work (Tr. 41).[3] When asked to clarify his director of security job, the claimant testified that "[he] was classified as a department head, . . ." and ". . . ran the department, more like a police chief would run a police department," and VE responded there was no Dictionary of Occupational Titles ("DOT") code for that job (Tr. 41). The ALJ then inquired about DOT code 189.167-050 (the same DOT code the VE previously identified), and the VE replied that title was superintendent, plant protection, which was a sedentary, skilled job (Tr. 42). The VE also stated she thought this job was "closer" (Tr. 42). The ALJ then

---

[3] A review of the DOT shows the security manager job is classified as sedentary work (DICOT § 189.167-050).

proposed four hypotheticals, one of which matched his eventual RFC assessment as set forth above, and the VE stated that with such an RFC, a person would be able to perform the claimant's past relevant work (Tr. 42-44). In his written opinion, the ALJ determined the claimant's RFC as described above, and found he was capable of performing his past relevant work as a security manager and retail manager, as actually performed and as generally performed (Tr. 18).

The claimant contends that the ALJ erred at phases two and three of his step four determination that the claimant could return to his past relevant work. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of his past relevant work (both physical and mental), and ultimately decide if his RFC enables him to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.*, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* at 1025.

The ALJ questioned the VE about the exertional and skill levels of the claimant's past relevant work at the administrative hearing, and recounted the VE's testimony as to the retail manager and security manager jobs in his written decision (Tr. 18). The ALJ thus made adequate findings about the general physical demands of the claimant's past relevant work. *See Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003) ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There

was nothing improper about this. An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey,* 92 F.3d at 1025. The ALJ also questioned the VE about the impact of the claimant's sit/stand option on his past relevant work; however, he did not question either the claimant or the VE about whether the retail manager or security manager jobs required more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling, which were also specific physical limitations in his RFC. And because the ALJ elicited no evidence on these points, he did not make (nor could he have made) specific findings of fact thereon.

In response to hypothetical questions incorporating the claimant's limitations, the VE opined that someone with the claimant's RFC could perform his past relevant work as a retail manager and superintendent, plant protection (Tr. 42-44). The VE evidently found *implicitly* that the claimant could perform the specific physical demands of the retail manager and superintendent, plant protection jobs with his RFC, but the ALJ made no such findings *explicitly* in his written opinion, rather, he simply stated in conclusory fashion that "In comparing the claimant's residual functional capacity with the physical and mental demands of [the jobs of retail manager and security manager], the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. 18). *See Frantz v. Astrue,* 509 F.3d 1299, 1304 (10th Cir. 2007) ("The ALJ's conclusory statement that '[t]he exertional and non-exertional requirements of this job [as a general clerk] are consistent with the claimant's residual functional capacity' is insufficient under *Winfrey* to discharge his duty to make findings regarding the mental demands of Ms. Frantz's past relevant work. This case is unlike *Doyal v. Barnhart,* 331

F.3d 758, 761 (10th Cir. 2003), where the ALJ quoted the VE's testimony approvingly in support of his own findings at steps two and three of the analysis. Here, there was no VE testimony, and no evidence of any kind, to establish the mental demands of Mr. Frantz's past relevant work and thus no evidence to support a finding that Ms. Frantz retains the mental RFC to work as a general clerk."). Such a process, although arguably sufficient at step five, is nevertheless wholly inadequate at step four of the sequential analysis, as the *Winfrey* court explained in detail:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.
>
> At step four, however, the scope of jobs is limited to those that qualify as the claimant's past relevant work. Therefore, it is feasible at this step for the ALJ to make specific findings about the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands. Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.

92 F.3d at 1025. The ALJ thus erred in this case not only in failing to make appropriate findings in the second phase of step four, but also in ceding decision-making authority to the VE in the third phase of step four. *See Young v. Apfel*, 198 F.3d 260, 1999 WL 979240, at *4 (10th Cir. 1999) (unpublished table opinion) ("Even if we generously read the ALJ's decision as finding Young's past relevant work was light . . . the ALJ made no

findings regarding whether performance of that work would be affected by Young's limitations in bending, climbing, balancing, crouching, or crawling.").

Because the ALJ failed to conduct a proper step four analysis of the claimant's ability to perform his past relevant work, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should elicit evidence and make specific factual findings on the specific demands of the claimant's past relevant work as a retail manager and security manager/superintendent, plant protection at phase two of step four, and determine at phase three whether he can perform such work with his RFC. If the ALJ determines at step four that the claimant cannot perform his past work, he should then determine at step five what work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**